The opinion of the court was delivered by
Duncan, J.
If the plaintiff in error had stopped with giving in evidence the receipt, and stuck to that as payment, his opponent might have had a case from which he would have found it difficult to escape, if it were so, as was alleged, that the receipt was given for the purpose of defrauding his creditors. He never could have convicted himself of that fraud. The receipt would have been good against him. A fraudulent donor cannot set up his own fraud to set aside an instrument for that fraud. 6 Co. 18. Hob. 106. 7 Johns. 162.
In Reigart v. Castator, 5 Binn. it was decided, that an instrument, however fraudulent as to creditors, as to the party is binding-and valid, and neither in courts of law or equity would he be permitted to aver against his own voluntary iniquity. A man shall not be permitted to set up his iniquity as a defence, any more than as a cause of action. Montefiori v. Montefiori, 1 W. Bl. 363. Fraud is irrevocable, as to him who commits it. 1 Fonb. 164. The maxim, that fraud vitiates' every contract, is always applied ad hominem, that is, to the party on whom the fraud is committed; but he who is himself a party to the fraud, and does that act for the purpose of defrauding his creditors, shall not set up the fraud in a controversy between him and his partner in iniquity — his companion in fraud — his brother conspirator. The plaintiff below could never have been received to prove, that the nine hundred dollars had never been paid, and the receipt a mere sham, to keep off his creditors. When he brings a suit for the price of a thing sold, and the vendee produces his receipt, he shall not be received to say, I gave the receipt for money that was not paid, for the purpose of defrauding my creditors; allegans suam turpitudinem non est audiendus. It would have behoved him to have shown that the receipt was given by mistake, or for some honest purpose; and why a man involved in debt, and on the.eve of going off, should give such a receipt for any honest purpose, cannot well be imagined. .
*226 In considering exceptions to evidence, it is always to be taken into view, for what purpose, and to prove what fact, it was offered. If the party offers it to prove one fact, and for one purpose, and it is rejected as evidence for that purpose, in reviewing the judgment of the inferior court, the reviewing court will not sustain the objection, though it might be evidence to prove something else than what it never was offered to prove; for that would be laying a snare for his adversary, as well as for the court. The question always is, was it good evidence for the purpose for which it was offered? This has been repeatedly decided by this court. Now, James Morrison was offered to prove the value of the mill, and for what purpose, — in further proof of the nullity of the receipt; not to disprove the allegation, that the lease was sold for nine hundred dollars, by showing, from the gross inadequacy of its value, that this could not have been the agreement, but to show a conspiracy between the parties, to cheat the creditors of one of them. The receipt was the voluntary act of the plaintiff in error, who gave it in evidence for the purpose of nullifying it The receipt was null, as he said, because the lease was not worth nine hundred dollars. For this purpose the evidence was inadmissible, and was properly rejected. It may be, that the plaintiff •received more than he ought to have done. I have no opinion to give on this subject. But if he did, there is not much cause for regret. It is a just punishment on the-defendant, who admits that he combined with the plaintiff, to defraud his creditors, and a warning to others.
. The charge of the court was entirely correct, on the allowance of interest during the time the debt was attached on Patterson’s suit. The sum claimed in this action is six hundred dollars. The sum for which the foreign attachment issued was about half that sum. The exact sum was stated in the writ. Beyond that, the garnishee could not have been made liable. He might have safely paid his creditor the residue, after liberal allowance for interest to accrue, costs, and his expenses. It would be most unreasonable, that, where the debt claimed is a large one, and the debt for which the attachment issued is a small one, that interest should be suspended during the pendency of the action on the whole sum. The debt, and interest, which would reasonably accumulate, the costs of the attachment, and liberal allowance to the garnishee, for his expenses, is the true principle. The jury had data to ascertain what that ought to be, and for that the interest should cease, but not beyond it. If the debt was ten thousand dollars, and one hundred only attached in the hands of the debtor, it would shock our understanding, all mankind would cry out against the law, if it pronounced that the creditor should lose the interest on his ten thousand dollars, to meet the debt of one hundred dollars. The damages are given in lieu of interest for the unjust detention of the debt. The debtor would be unjust, where ten thousand dollars were detained to in *227 demnify only against one hundred dollars. There has been no direct precedent produced, but the sound sense of the rule, stated by the Court of Common Pleas, recommends it for adoption. - Fitzgerald v. Caldwell’s Executors, as reported in 1 Yeates, seems to convey the opinion of Chief Justice M‘Kean, that the interest only ceases on the sum for which the attachment is laid. He says, no interest is to be allowed in that particular case, because the attachment was laid for a larger sum than the debt attached. No other reason can be given for this conclusion of the Chief Justice, than the one I have stated.
Judgment affirmed.